**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-1(b)

**WOMBLE BOND DICKINSON (US) LLP**
Ericka F. Johnson (NJ #032162007)
Lisa Bittle Tancredi (pro hac pending)
1313 N. Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 252-4337
Email: ericka.johnson@wbd-us.com
Email: lisa.tancredi@wbd-us.com

*Counsel for Ad Hoc Committee of States*

| | |
|---|---|
| In re:<br><br>LTL MANAGEMENT LLC,<br><br>Debtor.[1] | Case No.: 21-30589 (MBK)<br><br>Chapter: 11<br><br>Hon. Michael B. Kaplan |
| LTL MANAGEMENT LLC,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF NEW MEXICO, ex rel. HECTOR H. BALDERAS, Attorney General, and STATE OF MISSISSIPPI, ex rel. JIM HOOD, Attorney General,<br><br>Defendants. | Adv. Proc. No. 22-01231 (MBK) |

**OBJECTION OF THE AD HOC COMMITTEE OF STATES HOLDING CONSUMER PROTECTION CLAIMS TO DEBTOR'S MOTION FOR AN ORDER
(I) PRELIMINARILY ENJOINING THE PROSECUTION OF THE NEW MEXICO AND MISSISSIPPI STATE ACTIONS AND (II) GRANTING A TEMPORARY <u>RESTRAINING ORDER PENDING A FURTHER HEARING</u>**

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

WBD (US) 57124424v7

## TABLE OF CONTENTS

PRELIMINARY STATEMENT _____ 1

ARGUMENT _____ 3

    A.    The Consumer Protection Claims Differ From the Personal Injury Tort Claims _____ 3

    B.    Allowing the Pending State Suits to Proceed Will Benefit the Administration of the Bankruptcy Case _____ 4

    C.    Public Policy Weighs Against Enjoining the Pending State Suits; Consumers Need to Be Protected _____ 6

    D.    An Injunction of the Pending State Suits Would Violate Federalism and the Tenth Amendment _____ 11

    E.    The Bankruptcy Court Lacks Subject Matter Jurisdiction Over the Pending State Suits _ 13

CONCLUSION _____ 15

WBD (US) 57124424v7

# TABLE OF AUTHORITIES

**Cases**

*Baker v. Simpson*, 613 F.3d 346 (2d Cir. 2010)...................................................................... 15

*Cent. Va. Cmty. College v. Katz*, 546 U.S. 356 (2006)............................................................ 13

*In re Combustion Eng'g, Inc.*, 391 F.3d 190 (3d Cir. 2004)..................................................... 15

*In re Fed.-Mogul Global, Inc.*, 300 F.3d 368 (3d Cir. 2002).................................................... 15

*In re LTL Mgmt., LLC*, 640 B.R. 322 (Bankr. D. N.J. 2022)..................................................... 9

*In re Nortel Networks, Inc.*, 669 F.3d 128 (3d Cir. 2011) ......................................................... 7

*In re Project Orange Assocs.*, 432 B.R. 89 (Bankr. S.D.N.Y. 2010) ........................................ 9

*In re SCO Grp., Inc.*, 395 B.R. 852 (Bankr. D. Del. 2007) ..................................................... 10

*In re Venoco LLC*, 998 F.3d 94 (3d Cir. 2021) ....................................................................... 13

*Johnson & Johnson v. Fitch*, 142 S.Ct. 732 (2021).................................................................... 4

*Kos Pharm. Inc. v. Andrx Corp.*, 369 F.3d 700 (3d. Cir. 2004)................................................. 9

*Law v. Siegel*, 571 U.S. 415 (2014) .......................................................................................... 8

*Nw. Bank Worthington v. Ahlers*, 485 U.S. 197 (1988)............................................................ 8

*Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984) .............................................................. 15

*Penn Terra Ltd. v. Dept. of Envtl. Res., Comm'n of Pa.*, 733 F.2d 267 (3d Cir. 1984).............. 7, 8

*Tenn. Student Assistant Corp. v Hood*, 541 U.S. 440 (2004) ................................................. 13

*Torres v. Tex. Dep't. of Public Safety*, 142 S.Ct. 2455 (2022) ................................................ 14

*U.S. v. Nicolet, Inc.*, 857 F.2d 202 (3d Cir. 1988) .................................................................... 6

**Statutes**

11 U.S.C. § 105.............................................................................................................. 1, 7, 8, 14

11 U.S.C. § 362(b)(4) ............................................................................................................. 1, 6

28 U.S.C. § 1334 (b) ................................................................................................................ 15

28 U.S.C. § 1452(a) ................................................................................................................... 8

28 U.S.C. § 959 (b) .................................................................................................................... 8

**Other Authorities**

1978 U.S.Code Cong. & Ad.News ............................................................................................ 6

H. Rep. No. 95-595 .................................................................................................................... 6

S.Rep. No. 95-989 ...................................................................................................................... 6

**Constitutional Provisions**

U.S. Const. Amend. X ................................................................................................ 12, 14

U.S. Const. Art. 1, Sect. 8, Cl. 4 ...................................................................................... 12

WBD (US) 57124424v7

The Ad Hoc Committee of States Holding Consumer Protection Claims (the "Ad Hoc Committee"), by its undersigned counsel, Womble Bond Dickinson (US) LLP, hereby files this objection to the Debtor's Motion for an Order (I) Preliminarily Enjoining the Prosecution of the New Mexico and Mississippi State Actions and (II) Granting a Temporary Restraining Order Pending a Further Hearing [Adv. Docket No. 2] (the "Motion") and respectfully states as follows:

## PRELIMINARY STATEMENT

1. The Ad Hoc Committee opposes the above-captioned debtor's (the "Debtor") efforts to enjoin states from exercising their police powers for an indefinite period while the Debtor attempts to mediate resolutions in the Bankruptcy Court. Congress tells us through section 362(b)(4) of title 11 of the United States Code (the "Bankruptcy Code") that a state government's police and regulatory powers may not be stayed by a debtor's bankruptcy, without exception. Notwithstanding this clear legislative pronouncement, the Debtor asks this Court to circumvent section 362(b)(4) of the Bankruptcy Code by invoking its equitable powers under section 105(a) of the Bankruptcy Code to enjoin the cases filed by Mississippi and New Mexico (together, the "Pending State Suits"). The Court should not rely on Bankruptcy Code section 105 to evade a more specific provision of the Bankruptcy Code that is counter to the requested relief. Even if the Court were inclined to do so, the Debtor cannot satisfy its burden to obtain an injunction.

2. The Debtor argues that continuing litigation would be detrimental to the mediation process. However, the opposite is true. No state's consumer protection claims against the Debtor and its predecessors relating to talc-containing products have yet gone to trial. Unlike the personal injury claims, there are no judicial decisions to guide the parties or their experts in evaluating these claims. Accordingly, allowing the Pending State Suits to proceed to judgment will benefit all parties to the mediation process because they may provide useful information about how to value

the other consumer protection claims held by the members of the Ad Hoc Committee (the "AHC Members"). And, because the nature of the claims under consumer protection statutes are very different from personal injury claims, any risk of prejudice to the Debtor due to res judicata or collateral estoppel is limited.

3. The Pending State Suits must continue unimpeded in order to protect the health of the consuming public. Thousands of consumers may still have talc-containing products in their homes. While the Debtor contends that the injunctive relief sought by the states is no longer necessary because "the Talc Products sold in the U.S. and Canada no longer contain talc," the Debtor and its predecessors continue to publicly maintain that the products are safe. Nowhere does the website of new Johnson & Johnson Consumer Inc. ("New JJCI") warn consumers to discard talc-containing products. Instead, the website advises consumers that its cosmetic products are stable at room temperature for three years. Old Johnson & Johnson Consumer Inc. ("Old JJCI") did not announce its intention to discontinue the line in the United States and Canada until May 19, 2020, and New JJCI's website currently represents to consumers that talc-containing products are safe to use well into year 2023.[1]

4. The only way to protect the public from harm is for the Pending State Suits to proceed. Otherwise, New JJCI will be free to continue to propagate the notion that talc-containing products are safe, and vulnerable consumers may continue to use the products, not having been informed of the risks.

---

[1] See https://www.johnsonsbaby.com/faq#:~:text=Back%20to%20top-,Products,are%20stored%20at%20room%20temperature, accessed on August 1, 2022.

WBD (US) 57124424v7

## ARGUMENT

### A. The Consumer Protection Claims Differ From the Personal Injury Tort Claims

5. The consumer protection claims of New Mexico, Mississippi, and the AHC Members differ from the personal injury claims alleged by ovarian cancer and mesothelioma claimants in ways that bear on how the Court should decide the Motion.

6. As the Court has recognized, between 40 and 50 personal injury tort cases have gone to trial.[2] In contrast, no state consumer protection cases have been tried. While the plaintiffs' lawyers could "probably calculate on the back of an envelope a fair and accurate settlement"[3] for their cases, the same is not true for states holding consumer protection claims. While calculating the statutorily permitted penalties would be relatively simple, these calculated penalties would amount to trillions of dollars that do not necessarily reflect settlement value.

7. Nor are the state consumer protection claims duplicative of the personal injury claims. The factual and legal overlap between the consumer protection litigation and the personal injury tort litigation is limited. The Pending State Suits, which arise out of the defendants' marketing, sale, and promotion of talcum powder products, illustrate this lack of overlap. The gravamen of these suits is that the defendants misrepresented the uses, benefits, and qualities of these products, and that they misrepresented the products as meeting certain standards, when they did not. Accordingly, as reflected by the State of New Mexico's discovery requests (attached to the Motion as Exhibit 8), the pertinent facts in discovery are sales data, market share,

---

[2] Transcript of Rulings Before the Honorable Michael B. Kaplan on Thursday, July 28, 2022 ("July 28, 2022 Tr."), at 18:1-2, relevant portions attached hereto as Exhibit A.

[3] July 28, 2022 Tr. at 15:2-4.

advertisements, promotional materials, scripts, and the like. New Mexico's Rule 30(b)(6) notice, which identifies the topics for which testimony is sought from the defendants, is likewise focused on marketing, sales, revenue, and advertisements. *See*, Ex. 8 of the Motion (at 477 and 486 of 1138).

8.      Unlike the tort claimants, who must each prove that the defendants' products caused their specific cancers and injuries, the states must only show that the defendants made misrepresentations when marketing the products, a different and far lesser burden. Given these differences, a judgment in favor of New Mexico or Mississippi for violation of their respective consumer protection statutes is unlikely to have any prejudicial res judicata or estoppel effect on the Debtor in any later personal injury tort litigation. Moreover, based on the Debtor's litigation history, any judgment against the Debtor is likely to be appealed.[4] Accordingly, any decision adverse to the Debtor will provide data that will be useful for mediation purposes, but to the extent it has any res judicata or estoppel impact, such impacts would be minimal until the Debtor and non-debtor defendants exhaust their appeals or a settlement is reached. Thus, the Debtor will not be prejudiced by allowing the Pending State Suits to continue to trial.

**B.      Allowing the Pending State Suits to Proceed Will Benefit the Administration of the Bankruptcy Case**

9.      Allowing the Pending State Suits to proceed will benefit the administration of the Debtor's bankruptcy case, particularly, the mediation process. While there are nuanced differences, consumer protection statutes are generally similar from state to state. To be sure, the

---

[4]     Among other appeals, the defendants filed a petition for writ of certiorari to the United States Supreme Court, challenging a ruling of the Mississippi Supreme Court in the Mississippi action that was denied on December 12, 2021. *Johnson & Johnson v. Fitch*, 142 S.Ct. 732 (2021).

numerous tort judgments against the Debtor's predecessor and affiliates in talc-related cases suggest that they marketed talc products deceptively by touting their safety. But the parties can only speculate how a court would view the defendants' conduct and how any statutory penalties would be calculated. Having findings from one or more courts as to liability and statutory penalties would inform the mediating parties of the relative strengths and weaknesses of their positions with respect to the consumer protection claims.

10. Continuation of the Pending State Suits would not impede the mediation process or the bankruptcy case. The mediation process has not borne fruit with respect to the consumer protection claims in part, the Ad Hoc Committee believes, because the consumer protection claims have been largely disregarded by the Debtor. While the Ad Hoc Committee is ready, willing, and able to participate in mediation, the Ad Hoc Committee has yet to be included in any mediation session. Permitting the Pending State Suits to go forward may spur discussions. The limited scope of the Pending State Suits ensures that they will not divert resources from or interfere with the bankruptcy proceedings.

11. Moreover, unlike the situation with the tens of thousands of tort plaintiffs, there is no danger that allowing the consumer protection cases to proceed will "open the floodgates" of litigation. The potential pool of plaintiff states and districts holding consumer protection claims is finite -- there are only fifty states and six United States Territories. Most of the states and the District of Columbia are members of the Ad Hoc Committee, signaling their desire to resolve their claims through mediation, if possible.

12. Nor do the Pending State Suits present the concern of cherry picking (*i.e.*, that the Pending State Suits were specifically selected to drive up settlement amounts). Unlike tort cases,

with wildly varying facts and sympathies, state law consumer protection statutes are similar, and no state is more sympathetic than any other.

### C. Public Policy Weighs Against Enjoining the Pending State Suits; Consumers Need to Be Protected

13. Bankruptcy Code section 362(b)(4) exempts actions to enforce a state government's police and regulatory powers from the automatic stay.[5] 11 U.S.C. § 362(b)(4). Notwithstanding the Bankruptcy Code's express protection of states' rights to exercise police and regulatory powers, the Debtor has moved the Court to enjoin the Pending State Suits under Bankruptcy Code section 105. Accordingly, the issue before the Court is whether section 105 of the Bankruptcy Code may be used to enjoin or pre-empt the Pending State Suits under the doctrine of federal supremacy where Congress did not provide for such preemption and has expressly legislated that such actions should be permitted to continue unhindered by any bankruptcy.

14. The United States Court of Appeals for the Third Circuit has cautioned that federal supremacy may be invoked only where "it is clear that Congress so intended." *Penn Terra Ltd. v.*

---

[5] Notwithstanding, the legislative history of Section 362(b)(4) makes clear that fixing the amount of damages for violation of a consumer protection law is an action to enforce police and regulatory powers:

> Paragraph (4) excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory powers. *Thus, where a government unit is suing a debtor to prevent or stop violation of fraud, environmental protection,* **consumer protection**, *safety, or similar police or regulatory laws*, ***or attempting to fix damages for violation of such law****, the action or proceeding is not stayed under the automatic stay.*

S.Rep. No. 95-989 at 52, 1978 U.S. Code Cong. & Ad.News at 5787, 5838; H. Rep. No. 95-595 at 343, 1978 U.S. Code Cong. & Ad.News at 6299 (emphasis added). *See also U.S. v. Nicolet, Inc.*, 857 F.2d 202, 209 (3d Cir. 1988) (the seizure of property is stayed by section 362, but "[b]y simply permitting the government's claim to be reduced to judgment, no seizure of property takes place.").

*Dept. of Envtl. Res., Comm'n of Pa.*, 733 F.2d 267, 273 (3d Cir. 1984). In the case of consumer protection actions,

> [t]he police power of the several States embodies the main bulwark of protection by which they carry out their responsibilities to the People; its abrogation is therefore a serious matter. Congress should not be assumed, therefore, to have been miserly in its refund of that power to the States. Where important state law or general equitable principals protect some public interest, they should not be overridden by federal legislation unless they are inconsistent with explicit congressional intent such that the supremacy clause mandates their supersession.

*Id.* The Bankruptcy Code should be construed to avoid preemption of state law "absent an unmistakable indication to the contrary." *Id.*

15. Significantly, there is no Bankruptcy Code provision that expressly shields a debtor from state enforcement of consumer protection laws. Indeed, Congress did not intend that the Bankruptcy Code be used to stay state regulatory enforcement of consumer protection laws. *In re Nortel Networks, Inc.*, 669 F.3d 128, 137, 141 (3d Cir. 2011) (noting that § 362 (b)(4) is intended to prevent debtors from evading impending governmental efforts, under consumer protection regulations, to deter conduct that would seriously threaten the public safety.) Similarly, a suit brought by a governmental unit to enforce its policy or regulatory power may not be removed, including a suit related to a bankruptcy case. 28 U.S.C. § 1452(a). Further evidence that Congress intended for states to be empowered to enforce their consumer protection laws is found in 28 U.S.C. § 959 (b), which commands that a debtor shall operate in compliance with the laws of the states.

16. The equitable powers afforded under section 105 may be exercised only within the confines of the Bankruptcy Code. *Law v. Siegel*, 571 U.S. 415, 421 (2014); *Nw. Bank Worthington*

*v. Ahlers*, 485 U.S. 197, 206 (1988). Based on the foregoing, section 105 may not be used to override and enjoin the Pending State Suits.

17. Even where a conflict between state and federal statutes exists, a Court must apply traditional equitable standards to justify issuance of an injunction under Bankruptcy Code section 105. *Penn Terra* at 274. Courts consider each of the following four elements in determining whether a preliminary injunction is appropriate: (1) whether the movant has a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured if the relief is denied; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief would be in the public interest. *In re LTL Mgmt., LLC*, 640 B.R. 322, 335 (Bankr. D. N.J. 2022). Moreover, "[a] preliminary injunction is an 'extraordinary remedy, which should be granted only in limited circumstances.'" *Id.* (citing *Kos Pharm. Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d. Cir. 2004)).

18. In a bankruptcy case, the first element, likelihood of success, is akin to the debtor's ability to successfully reorganize. *Id.* This factor weighs against granting the Motion. The Debtor's likelihood of accomplishing a consensual reorganization would be advanced by allowing the Pending State Suits to proceed to judgment. Enjoining the Pending State Suits would deprive the parties of information that is needed to advance mediation and a successful reorganization. Bankruptcy courts recognize that state court litigation can "greatly assist" with reorganizations. *In re Project Orange Assocs.*, 432 B.R. 89, 107 (Bankr. S.D.N.Y. 2010). In this case, the Pending State Suits will "greatly assist" with the Debtor's reorganization because the resolution of the Pending State Suits will help resolve liability and liquidation of claims issues that need to be answered to move the bankruptcy case forward.

19. It follows that the Debtor fails the second element of the test, because the Debtor will not be irreparably injured if the injunction is denied. In fact, the Debtor would benefit from a denial of the requested relief because its reorganization process would be aided by the Pending State Suits proceeding. The Pending State Suits are on the eve of trial so enjoining the actions will not conserve estate resources (and such resources are not finite and dwindling like in a typical debtor case). Immense resources have already been dedicated in the years leading up to the trials and the "longer trial is delayed, the more burdensome it [would be] to both parties to ready themselves again." *In re SCO Grp., Inc.*, 395 B.R. 852, 858 (Bankr. D. Del. 2007) (lifting stay of litigation that had been pending for four years in a non-bankruptcy forum and that was ready for trial). Moreover, as noted above, the States' consumer protection claims differ from the personal injury claims. Accordingly, a judgment in favor of New Mexico or Mississippi for violation of those states' consumer protection statutes is unlikely to have any prejudicial res judicata or estoppel effect on the Debtor with respect to any personal injury tort claimant.

20. The Debtor also fails the third and fourth elements of the test because granting the relief requested in the Motion causes significant harm to consumers and is against public policy. Consumers will be harmed if the Pending State Suits are enjoined. The Debtor incorrectly claims that the injunctive relief sought in the Pending State Suits is not necessary because "the Talc Products sold in the U.S. and Canada no longer contain talc."[6] However, a voluntary cessation of sales does not prohibit future potential sales and Old JJCI did not announce until May 19, 2020

---

[6] *See* Debtor's Verified Complaint for Injunctive Relief (I) Preliminarily Enjoining the Prosecution of the New Mexico and Mississippi State Actions and (II) Granting a Temporary Restraining Order Pending a Final Hearing, Adv. Proc. No. 22-01231 (MBK), ¶ 73.

that it would discontinue its line of talc-based baby powder in the United States and Canada. New JJCI's website advises consumers that products are stable for 3 years from the time of manufacture when stored at room temperature. J&J's Consumer Health continues to advocate on its website that talc products have been used for centuries and that they are safe, thereby encouraging the continued use of talc products.[7]

21. There are likely thousands, if not millions, of bottles of talc-containing products that were manufactured and sold before May 19, 2020 that are still on consumers' shelves at home and in use.[8] At all times, the Debtor and non-debtor defendants have adamantly maintained that products containing talc are absolutely safe. Their vehement insistence that the products are harmless, failure to warn consumers that talc-containing products should be discarded, and continued production and sale of Talc Products outside of the U.S. and Canada,[9] sends a misleading message to the thousands of consumers in the United States who may still be using talc products. Absent a well-publicized announcement and acknowledgment of the correlation between the use of talcum powder products and cancers (which the Debtor and New JJCI are unlikely to promulgate), injunctive relief is necessary to inform consumers of the risks associated with talc products.

---

[7] *See* https://www.factsabouttalc.com/safety.

[8] The announcement of the intended discontinuation of the product line was made on May 19, 2020. The Debtor does not state when Old JJCI actually stopped selling these products in the United States and Canada, and whether then-existing talc-containing inventory was discarded, or whether it was sold until depleted.

[9] On August 11, 2022, Johnson & Johnson Consumer Health announced it would transition to an all cornstarch-based baby powder portfolio. However, the same announcement also states, "Our position on the safety of our cosmetic talc remains unchanged. We stand firmly behind the decades of independent scientific analysis by medical experts around the world that confirms talc-based JOHNSON'S® Baby Powder is safe, does not contain asbestos, and does not cause cancer." *See* https://www.factsabouttalc.com/_documents/johnson-johnson-consumer-health-to-transition-global-baby-powder-portfolio-to-cornstarch?id=00000182-8df9-d979-a797-edfb15d40000.

22. Public policy cries out for denial of the Motion. The injunction sought by the states in the Pending State Suits is a necessary safeguard to prevent the defendants, who have allegedly voluntarily ceased to use talc ingredients while at the same time refuse to admit that talc may be harmful, from restarting sales in the United States or from slipping harmful ingredients into future products for sale to the unsuspecting and uninformed public. Absent an injunction issued in the Pending State Suits, nothing prevents the defendants from introducing or reintroducing talc ingredients into products in the future.

23. One of the most important functions of the government – whether it be the judicial, legislative, or executive branch, is to protect the public from harm. Experts may debate how much asbestos exposure causes mesothelioma or ovarian cancer. The Ad Hoc Committee respectfully submits that any risk is too high especially when the risk is undertaken without warning, and this is not a risk that the Court should accept. As a matter of public policy, the Court should not stay or enjoin ongoing efforts by the states to protect the consuming public from future exposure to talc-containing Talc Products, with potentially fatal consequences. Public policy – the need to protect consumers from future harm – compels denial of the Motion.

D. **An Injunction of the Pending State Suits Would Violate Federalism and the Tenth Amendment**

24. The United States Constitution establishes a system of "dual sovereignty" over which the dual sovereigns, the federal and state governments, independently govern the people directly. The Constitution confers discrete, enumerated powers to Congress, while the Tenth Amendment emphasizes that the remaining powers continue to reside with the States. U.S. Const. Art. 1, Sect. 8, Cl. 4 (conferring upon Congress the "[p]ower to . . . establish uniform laws on . . .

the subject of bankruptcies throughout the United States"); U.S. Const. Amend. X("[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States, respectively, or to the people.")

25. States acquiesced in the subordination of their sovereign immunity in proceedings "necessary to effectuate the *in rem* jurisdiction of bankruptcy courts." *Cent. Va. Cmty. College v. Katz*, 546 U.S. 356, 378 (2006). However, not every bankruptcy law may impinge upon state sovereign immunity. *Katz* at 378, n.15. State sovereign immunity continues to apply to those proceedings that do not further the bankruptcy court's *in rem* jurisdiction. *See In re Venoco LLC*, 998 F.3d 94, 103-104 (3d Cir. 2021).

26. In determining whether a proceeding furthers *in rem* jurisdiction, the focus is on bankruptcy's three critical functions, as articulated by *Katz*: (1) the exercise of exclusive jurisdiction over the debtor's property, (2) the equitable distribution of property among creditors, and (3) the discharge that gives an individual debtor a fresh start. *See Katz* at 363-364.

27. Moreover, even if a determination is made that the bankruptcy court's actions are furthering its *in rem* jurisdiction, such a finding alone would not end the sovereign immunity analysis. The Supreme Court has made clear that not every exercise of "a bankruptcy court's in rem jurisdiction overrides sovereign immunity . . . ." *Tenn. Student Assistant Corp. v Hood*, 541 U.S. 440, 451 n.5 (2004). Rather, a finding must be made that the bankruptcy court's exercise of such jurisdiction "is not an affront to the sovereignty of the State." *Id*. (finding no affront to state sovereignty where a bankruptcy court acted on an adversary complaint seeking to discharge student loan debt); cf. *Torres v. Tex. Dep't. of Public Safety*, 142 S.Ct. 2455 (2022) (holding that a waiver of sovereign immunity by the states requires a showing that the powers at issue were

granted exclusively to the federal government). Here, it would be an affront to the states' sovereignty to deny the states the ability to protect their consumers through the exercise of the states' police powers. In contrast to bankruptcy-related matters where the Supreme Court found waiver of sovereign immunity (such as discharge of a debt), nothing in the text or history of the Constitution's Bankruptcy Clause suggests that the states gave up the power to protect their citizens when they agreed to join the Union. In fact, the Tenth Amendment makes clear that these important powers were reserved by the states.

28. The imposition of a section 105 injunction to stay the Pending State Suits goes far beyond what is necessary to effectuate *in rem* jurisdiction. The suits do not involve the exercise of exclusive jurisdiction over the Debtor's property, equitable distribution of the Debtor's property, or any bankruptcy discharge. Instead, the Pending State Suits are exercises of police and regulatory powers properly reserved to the states. An injunction of the Pending State Suits would violate state sovereignty and the Tenth Amendment of the Constitution, and impede a critical state duty –to protect vulnerable citizens.

E. **The Bankruptcy Court Lacks Subject Matter Jurisdiction Over the Pending State Suits**

29. Bankruptcy courts have subject matter jurisdiction over "civil proceedings arising under title 11, arising in, or related to cases under title 11." 28 U.S.C. § 1334 (b). The direct claims of Mississippi and New Mexico are based on state consumer protection statutes; they exist outside of bankruptcy and do not arise under or arise in title 11. *See Baker v. Simpson*, 613 F.3d 346, 351 (2d Cir. 2010) (discussing that claims "arising in" Title 11 are not clearly defined, but

13

are not based on any right expressly created by Title 11, "but nevertheless, would have no existence outside of the bankruptcy.").

30. A suit between non-debtors is "related to" a bankruptcy proceeding if the outcome of the suit could conceivably have any effect on the bankruptcy estate. *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984). The *Pacor* standard, however, is limited. "The test articulated in *Pacor* for whether a lawsuit could 'conceivably' have an effect on the bankruptcy proceeding inquires whether the allegedly related lawsuit would affect the bankruptcy without the intervention of yet another lawsuit." *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 227 (3d Cir. 2004) (quoting *In re Fed.-Mogul Global, Inc.*, 300 F.3d 368, 382 (3d Cir. 2002)). As the moving party, the Debtor bears the burden of proving that a monetary judgment entered against any non-debtors will result in liability of the Debtor without additional litigation. Thus far, the Debtor has offered declarations, stating the alleged terms of contracts, which are hearsay and do not satisfy the Debtor's burden. And, in light of the history and demonstrated litigation appetite of the Debtor and its predecessors, it is inconceivable that they would not raise defenses to any alleged contractual liability.

31. In any event, a significant aspect of the Pending State Suits, unquestionably, has no conceivable effect on the Debtor's bankruptcy proceedings. One purpose of consumer protection suits, such as the Pending State Suits, is to protect the public from future harm. Notwithstanding the machinations and contortions that the Johnson & Johnson companies have undertaken to avoid the consequences of their marketing, promotion, and sale of talc products, New JJCI continues to advise consumers, including on its website, that talc-containing products are safe. In contrast to opioid and other asbestos cases, where risk and the potential for harm were generally

acknowledged, this Court has witnessed a continuous concerted effort to tout the safety of talc-containing products. In order to protect the public, it is imperative that the Pending State Suits proceed so that appropriate injunctive relief, which will have no conceivable effect on the Debtor's bankruptcy proceedings, may be obtained. It is the duty of the states to protect the public from harm. The Ad Hoc Committee respectfully requests that the Motion be denied so that Mississippi and New Mexico may continue to exercise this critical function.

## CONCLUSION

WHEREFORE, the Ad Hoc Committee of States respectfully requests that the Court: (a) deny the Motion; and (b) grant such further relief as the Court may deem just and proper.

**WOMBLE BOND DICKINSON (US) LLP**

Dated: August 12, 2022.

By: */s/ Ericka F. Johnson*
Ericka F. Johnson (NJ #032162007)
Lisa Bittle Tancredi (pro hac pending)
1313 N. Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 252-4337
Email: ericka.johnson@wbd-us.com
Email: lisa.tancredi@wbd-us.com

*Counsel for the Ad Hoc Committee of States*

WBD (US) 57124424v7